JUDGE BULLITT
delivered the opinion of the court:
In the year 1859 the appellees conveyed the lease and furniture of a hotel to the appellant, Lewis, in trust for the separate use of Ann R., wife of John H. Talbott, in consideration of $1,874.57, of which $1,000 was paid with money derived by Mrs. Talbott from her mother’s estate, and for the residue of which Lewis, trustee, gave two notes. One of the notes was paid, and part of the other; how or by whom, does not appear. For the unpaid residue a new note was given, which we copy:
“$379.20. Louisville, Ky., July 1, 1860.
Four months after date, we, John B. Lewis, trustee for Ann R. Talbott, and Ann R. Talbott, John H. Talbott, and W. H. Middleton, jointly and severally promise to pay to the order of L. W. Harris & Go., three hundred and seventy-nine dollars, negotiable and payble at the Bank of Kentucky, with interest from date, for value received.
Given under our hands this day and date as above.
JOHN B. LEWIS,
Trustee for Ann R. Talbott,
ANN R. TALBOTT,
JOHN H. TALBOTT.
Wm. H. Middleton, (Security.)”
The appellees sued the makers of said note, alleging the facts above mentioned, and praying for a judgment for their debt and all proper relief.
The chancellor dismissed the petition as to the trust-property, and rendered a judgment against Lewis, Middleton, and John H. Talbott, from which they appeal.
The only question that we need to discuss is, whether or not Lewis is individually liable upon the note.
We need not cite authorities to prove that a person is not liable upon a contract which he makes, as the agent or trustee of another, with authority to do so.
It is clear, also, that the note sued upon purports, prima facie, *355 to have been executed by Lewis as the trustee of Mrs. Tal-bott. The appellees, however, rely upon two facts as showing that he meant to bind himself, and not merely the trust estate:
1. The first fact is, that Lewis failed to deny the allegation, that the “defendants, John B. Lewis and Ann R. Talbott, signed said note with the intention of binding both of said defendants, and subjecting said trust property to the payment of said note.” The failure to deny this allegation, it is contended, is an admission that Lewis intended to become individually bound.
But it is not distinctly alleged that he meant to bind-himself individually; and we doubt whether the sentence above quoted, if it stood alone, should be regarded as alleging more than that he meant to bind the trust estate and himself, as trustee. That doubt is increased by the fact, that the next sentence of the petition alleges that said defendants “signed said note with the intention of binding the separate estate of said A. R. Talbott.” If Lewis signed the note for that purpose, of course he did not intend to bind himself individually.
Moreover, the question concerning his intention is a question of law, to be decided by the court, in view- of the language of the note, the circumstauces under which it was executed, and the situation of the parties. The allegation, therefore, concerning the intention with which he sig-ned the note, is an allegation of a legal implication, and no denial was necessary.
2. It is contended, that, as was held by the chancellor, according to the Revised Statutes, a separate estate of the wife cannot be incumbered except by the order of a court of equity;” that Lewis must be presumed to have known that such was the law; and, therefore, it must be presumed that he intended to bind himself.
The chancellor’s conclusion is probably right, if he correctly assumed that the Revised Statutes prohibit the trustee of a separate estate from creating any charge upon it. But, in our opinion, that assumption-is not correct.
The statute is as follows: “If real- or personal" estate be *356 hereafter conveyed or devised for the separate use of a married woman, or for that of an unmarried woman, to the exclusion of any husband she may thereafter have, she shall not alienate such estate with or without the consent of any husband she may have; but may do so, when it is a gift, with the consent of the donor or his personal representative.” (Revised Statutes, chap. 47, art. 4, sec. 17.)
The statute applies to indirect as well as direct alienations, and, consequently, prohibits married women from creating any charge or incumbrance upon their separate estates. (Stacker vs. Whitlock, 3 Met., 244; Hanly & Co. vs. Downing, et al, decided in December, 1862.) But it 'speaks only of alienations by married women. We perceive no principle of construction which authorizes us to apply it to alienations by their trustees, nor any reason for attempting thus to strain its language.
Before the statute, married women were treated in equity as unmarried women with reference to their separate property. A married woman could sell her equitable title, or charge it for her debts, according to her discretion, unless expressly restrained by the instrument creating the estate. Apparently, the chief object of the statute is, to destroy those powers formerly possessed by married women, and thus prevent them from making improvident dispositions of their separate estates, under the influence of their husbands. To accomplish that object it was not necessary to prohibit alienations by their trustees, because, first, the husband’s influence does not extend to the trustee; and, secondly, before the statute, the trustee of a separate estate could not sell it except under an express power of sale, nor could he create any charge upon it except for purposes authorized by the creator of the trust, or approved by courts of equity.
It has been decided that the statute prohibits a married woman from selling her separate property, purchased and held by her under a conveyance, which declared that she might sell and convey the property as if she were an unmarried woman. (Stewart, &c. vs. Wilder, 17 B. Mon., 55.) According to that decision, the statute, if it applies to alienations by trustees, prohibits the sale by a trustee of a separate estate, even under *357 an express power of sale. It seems clear that this was not' the object of the legislature.
Our conclusion is, that the rights and powers of trustees, with reference to such, estates, are not affected by the statute.
It is equitable that the trust-property conveyed to Lewis, shp.ll be subjected for the purchase money. If he had.paid the note sued upon with his own money, he would have held an equitable lien on the property for his reimbursement. (Hill on Trustees, 572.) He had the power to substitute the appellees to the equitable lien which he would have acquired by advancing the purchase money, and thus to create a charge upon the property for the payment of the note. And it is clear that he intended to do so, and not to bind himself individually.
The other grounds of defense are not sustained by the evidence.
The judgment against Lewis, and dismissing the petition as to the trust-property, is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.